### IN THE UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

PAUL R. SMITH and
WILLIAM J. GLISSON,

      **Plaintiffs,**

**v.**                                                        **CIVIL ACTION NO. 06-0093-KD-M**

CITY OF MOBILE, et al.,

      **Defendants.**

### ORDER

This action comes before the court on the following:  the consolidated Motion of all City

defendants for Summary Judgment against the claims of both plaintiffs and brief in support, (docs.

85, 86), as adopted (doc. 92) by defendant Mobile County Personnel Board; plaintiffs' response in

opposition (doc. 98) and defendants' reply (doc. 104).  For the reasons set forth below, the court

finds that the defendants' Motion is due to be **GRANTED, in part** and **DENIED, in part**.

Plaintiff Paul Smith brought the instant action challenging the failure to promote him to

either of two open positions with the Mobile Fire and Rescue Department, i.e., Assistant Chief and

Deputy Chief.  Plaintiff William Glisson challenges the failure to promote him to Deputy Chief.  In

their Second Amended Complaint (doc. 45), they claim that defendants, the City of Mobile, Fire

Chief Stephen Dean (in both his individual and official capacities), Mayor Samuel Jones (in both

his individual and official capacities), and the Mobile County Personnel Board, discriminated

against them for the position of Deputy Chief on the basis of their race [Caucasian].[1]  In addition,

---

[1]  As the vehicle for their race discrimination claims, plaintiffs cite the Fourteenth
Amendment to the United States Constitution, as well as 42 U.S.C. §§1981 and 1983 and Title
VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e, et seq.

plaintiff Smith claims that, when considering him for the positions of Assistant Chief and Chief Deputy, defendants violated his rights under the federal Uniform Services Employment and Reemployment Rights Act (USERRA), 38 U.S.C. § 4301 *et seq*.  Plaintiff Glisson alleges discrimination on the basis of age under both state and federal age discrimination laws.[2]

I. Facts[3]

    A) Hiring Process

    Plaintiffs are Caucasian employees of the Mobile Fire and Rescue Department.  Smith has been employed by the Department since 1987, and has held the position of District Chief since 2002. At the time of the vacancy announcement and interviews, Glisson was 55 years of age; he has been employed by the Department since 1975 and has held the position of District Chief for District One since 1999.  District Chief is the fourth highest position in the Department[4], directly below the

---

    [2]  Alabama's Age Discrimination in Employment Act is codified at Ala.Code 1975 §25-1-20 *et seq*.  The federal statute, the Age Discrimination Employment Act of 1967, as amended, is codified at 29 U.S.C. § 621 *et seq*.

    [3]  The court, in considering a motion for summary judgment, construes the facts in the light most favorable to the nonmovant.  *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). The "facts, as accepted at the summary judgment stage of the proceedings, may not be the actual facts of the case."*Priester v. City of Riviera Beach,* 208 F.3d 919, 925 n. 3 (11th Cir.2000).
    As noted in defendants' Reply brief (doc. 104), plaintiffs have failed to support much of their statement of facts with citations to the record.  A party may not, by the simple expedient of dumping a mass of evidentiary material into the record, shift to the Court the burden of identifying evidence supporting its position.  *See, e.g., Adler v. Wal-Mart Stores, Inc*., 144 F.3d 664, 672 (10th Cir. 1998) ("The district court has discretion to go beyond the referenced portions of these [summary judgment] materials, but is not required to do so."); *accord Jones v. Sheehan*, Young & Culp, P.C., 82 F.3d 1334, 1338 (5th Cir. 1996); *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989); *Lawson v. Sheriff of Tippecanoe County*, 725 F.2d 1136, 1139 (7th Cir. 1984); *Karlozian v. Clovis Unified School District*, 2001 WL 488880 at *1 (9th Cir. 2001); *see also* Local Rule 7.2(b).

    [4]  Plaintiff notes that there are also other top-tier managers such as the Fire Administrator and the Fire Marshall which are not presently at issue.

positions of Deputy Chief, Assistant Chief and Chief.  At the time of the announcements and interviews there was one vacancy for Deputy Fire Chief and one vacancy for Assistant Chief. Following the interviews, a fourth Deputy Chief position was created.  The applicants selected to fill the two Deputy Chief positions were Richard Brannon, a forty-nine year old Caucasian male, and Mark Hansberry, a forty-one year old African-American male.  The applicant selected to fill the Assistant Chief position was William Pappas.

On January 20, 2005, the Chief of Staff for Mayor Michael Dow[5] submitted a Personnel Action Request to the Mobile County Personnel Board concerning a promotional announcement for the position of Assistant Fire Chief.  (Doc. 100, Exhibit 1)  The form indicated that it was done in anticipation of the retirement of the incumbent, effective April 1, 2005.  On January 21, 2005, Mayor Dow's Chief of Staff sent another Personnel Action Request form to the Mobile County Personnel Board for one of the three Deputy Chief positions; the form noted that the opening was expected due to promotion of one of the Deputy Chiefs to the Assistant Chief position.  (Doc. 100, Exhibit 2)  Because plaintiff Glisson withdrew his name from consideration for the Assistant Chief position, the instant case involves only the Deputy Chief position, of which there was–at the time of the announcement and interviews–only one open position.  Additional positions had been contemplated prior to that time and a fourth deputy chief position was added after the interviews were completed.

Once the Personnel Board receives a request, if it does not already have a register of qualified candidates for the position, it issues an announcement.  (Doc. 1001, Exhibit 31- Deposition of Shannon Weekley  at 45-48)  The announcement gives information on the opening, the deadline

---

[5]  Mayor Dow was the predecessor to Mayor Jones.

and minimum qualifications, and may include the time and place of any test if the applicant pool is likely to be small enough.  (*Id*.)  Once the position has closed, the Personnel Board begins the examination process which consists of written or oral tests, or may be simply an evaluation of submitted information.  (*Id*.)

With regard to the openings for Assistant Chief and Deputy Chief, the Personnel Board arranged for three fire chiefs from departments around the country to conduct an interview of the candidates who met the minimum qualifications.  (Doc. 100, Exhibit 3)  Their resumes demonstrate their qualifications.  (Doc. 100 Exhibits 4, 5, 6)  The questions used for the oral test, or interview, were adapted by the Personnel Board from a previous test.  (Doc. 100, Exhibit 25 -Deposition of Donald Dees at 29)  Preparation of the prior test had included a job analysis and test validation. (Doc. 100, Exhibit 30 - Deposition of Steve John Urbanek  at 13)  Questions are drawn from study materials by human resources professionals and are reviewed by focus groups made up of "subject matter experts" drawn from departmental employees at or above the level of the position who had knowledge of the requirements of the particular job. (*Id*. at 22-30; Exhibit 25-Dees dep. at 29-32).

The interviewers for the Personnel Board were required to ask only the prepared questions. (Doc. 100, Exhibit 25-Dees dep. at 152)  There was no written examination and the panel members did not see or consider the personnel files of the applicants.  (Doc. 87, Exhibit 1 at 146, 152) According to the announcement for the Deputy Chief position, the applicants were to be evaluated "on the extent and quality of their education and experience and on their personal qualifications. These ratings will be based on the candidate's sworn statements in their applications, upon corroborative evidence obtained by investigations, and upon an oral examination by an examining board."  (Doc. 100, Exhibit 7)

As a result of the evaluations by the three Fire Chiefs, the Mobile County Personnel Board created a roster of all qualified candidates.  From this list they created a list of ten candidates, ranked in order of qualifications, whom they viewed as the most qualified.  This "Certificate of Eligibles" was dated November 16, 2005, and listed Smith, Glisson, Hansberry and Brannon, in that order, as the four best top candidates for the position of deputy fire chief. (Doc. 100, Exhibit 9)  The "Certificate of Eligibles" for Assistant Chief ranked Smith as the top candidate and ranked Pappas as number five.

Prior to attempting to fill the positions in the instant case, Chief Dean consulted with Chief Cochran, the Chief of the Mobile Police Department, concerning possible methods of structuring the hiring process to avoid complaints from the union and the possibility of a discrimination suit. (Doc. 100, Exhibit 24- Deposition of Stephen A. Dean  at 135-140.)  Dean decided that he would pick four people to participate in the interviews of the candidates identified by the Personnel Board and to advise him.  *Id*.   Nonetheless, the decision would remain his alone.  (*Id*. at 149-50; *see* footnote 22, *infra*.)  He checked his plan with the Mayor's Chief of Staff, and worked with Leslie Westerburg, Director of Human Resources for the City of Mobile, to write questions for the new panel.[6]  (*Id*. at 151) Because of his working relationship with her, he allowed her to take the lead in the discussions.  (Doc 100, Exhibit 24 -Dean dep.  at 163-64)

Either Chief Dean or the Mayor's Chief of Staff contacted each of the people chosen for the committee: Leslie Westerburg, Barbara Malkove, John Bell and Walt Dickerson.  Dickerson was unavailable so Ronnie Adair, Deputy Director of the Mobile County Emergency Management

---

[6]  However, Ms. Westerburg testified in her deposition that she was not involved in creating the questions.  (Doc. 100, Exhibit 32-Deposition of Leslie Westerburg at 85-86.)  That question does not appear to favor plaintiffs whichever way it is answered.

Agency, took his place.  The questions Dean wrote were assigned to the interviewers who were not

to go beyond those questions.  (Doc. 87, Exhibit 7-Deposition of Barbara Malkove  at 11; Exhibit

6- Deposition of Ronnie Adair at 22)  None of these people had experience as a fire fighter.[7]  They

were not given any criteria for selecting candidates (Doc. 100, Exhibit 21-Adair deposition  at 22-

23), had no access to personnel records, (*id*., at 33) had resumes only if the applicants brought

copies, (*id*., at 33-34) and had not been given a copy of the job announcement or otherwise made

aware of the minimum qualifications or job duties for the positions.  (*Id*., at 18, 22.)

The panel first interviewed candidates for the position of Assistant Fire Chief.  The evidence

supports defendants' assertion that the panel agreed that Pappas, a white male, should be promoted

to Assistant Chief.

The panel then interviewed candidates for the Deputy Chief position vacated by Chief

Pappas.  After the interviews, Bell asked Dean how he wanted the panel to proceed, whether he

wanted them to give him their number one picks or their whole list or in some other way.  (Doc. 100,

Exhibit 21-Adair dep. at 30-31)  Dean told them to go around the table and state their top three

choices.  (*Id*.)  According to the panel members, their choices were as follows:

Adair: Smith, Hunter, Morris.  Hansberry would have been next, but Dean had asked for the

top three. (Doc. 100, Exhibit 21-Adair dep. at 21, 31)

Bell: Recalled only that Smith and Hansberry were on his list.  He could not recall the third

name he gave, but believed that it was not Brannon. (Doc. 100, Exhibit 22-Deposition of John Bell

at 63-64)

---

[7]  One of the interviewers, Adair, had put out shipboard fires as part of his duties as a
damage controlman for six years while in the Navy but stated that he was "not a firefighter in
any stretch of the imagination."  (Doc. 100, Exhibit 21-Adair dep. at 50.)

Malkove: Hansberry and Brannon were her top two names, followed by Smith and Glisson. (Doc. 100, Exhibit 27-Malkove dep. at 34, 40)

Westerburg: After discussion, the top two names were agreed: Hansberry and Brannon, as stated in the memorandum she typed after the decision.[8] (Doc. 100, Exhibit 32-Westerburg dep. at 87, 68-72)

There is conflicting evidence regarding whether the panel came to a consensus, or whether, after discussion, Chief Dean merely made a decision in which the panel acquiesced. (Doc. 100, Exhibit 21-Adair dep. at 36-43) On summary judgment, the court must accept the latter.[9] Regardless, Dean indicated that he would choose Brannon for the Deputy Chief position because of his experience and asked if any of the panel members opposed that choice; no one did. (*Id.* at 38-39) Following that, Chief Dean stated that a fourth Deputy Chief position might become open or be created in the near future. (Doc. 100, Exhibit 32-Westerburg dep. at 88) Dean asked the panel if they had objections to the promotion of Hansberry to such a position if it became available.[10] Again, no one opposed it. (Doc. 100, Exhibit 21-Adair dep. at 44-45; but see Doc. 100, Exhibit 22-Bell dep. at 76 (no mention of additional position).)

---

[8] A memorandum was prepared after the discussions and passed around for signature in later days. The court finds sufficient evidence that a reasonable jury could determine that the indications in the memorandum that the decisions cited were unanimous are incorrect. While the panel members all agree that it correctly stated the final determination reached on the top two applicants, several members indicated that the determination did not match their own preferences among the candidates. (Doc. 100, Exhibit 21-Adair dep. at 44-45; Exhibit 22- Bell dep. at 77-79; Exhibit 27-Malkove dep. at 41-42)

[9] Regardless, even a consensus would not have been binding on Dean. As the final decisionmaker, Dean's knowledge and prejudices are not insulated from the ultimate decision.

[10] Mr. Adair also testified that, with regard to Hansberry, Dean stated at the time that he had decided to choose Hansberry based on the committee's discussions. (Doc. 100 - Exhibit 21-Adair dep. at 51-52) The jury need not believe Dean's statement.

B)  Prior Findings of Intentional Discrimination

Chief Dean and the City have been involved in two prior discrimination lawsuits in this court that led to jury verdicts finding that Dean discriminated against white employees in promotions in favor of African-American employees.  *See Silvester v. City of Mobile*, CV02-987-CG-M and *Stringfellow v. City of Mobile*, CV04-281-CG-M.  In *Silvester*, plaintiff filed a Title VII claim based on race discrimination for failure to promote.  In that case Dean had promoted a lower ranked African-American employee over a Caucasian employee.  The case ultimately resulted in a verdict for the plaintiff.

In *Stringfellow*, Chief Dean had promoted three people, two Caucasians and an African-American, Morris, to the position of District Chief.  Plaintiffs offered direct and indirect evidence of discrimination.  To promote Morris, Dean had to bypass four Caucasians who were more qualified.  Dean offered subjective reasons for the decision, identifying criticisms of the four white candidates ranked above Morris. In *Stringfellow*, "the jury returned its verdict and found that defendant had intentionally discriminated against each of the four plaintiffs on the basis of race, but that the defendant would have denied each of the four plaintiffs a promotion for other reasons, even in the absence of consideration of the particular plaintiff's race" and awarded damages to each plaintiff. (*Stringfellow* order, doc. 116, dated July 28, 2006.)  The court found that the special jury interrogatories were erroneous because they allowed the jury to award damages although they had found mixed motive.   Accordingly a new trial was granted.  (*Stringfellow* order, dated June 20, 2006.)  Before the second trial was held, the parties settled the case.

C)  Prior Statements of Dean

Dean gave an oral presentation to the County Commission as part of Mayor Jones' Transition

Task Force.  The final report, dated January 31, 2006, indicates that Dean told the County Commission "[w]e focus on hiring minorities, and they are hired if they pass all of the tests." (Doc. 100, Exhibit 18)  Dean also is alleged to have commented on an unrelated promotion that he promoted the individual because he was "black".  (Doc. 100, Exhibit 29-Deposition of Captain Leann Tacon at 23-24).

   D)  Comparative Qualifications

Brannon, a white male who was forty-nine years old at the time of the promotion, holds a bachelor's degree in Professional Studies in fire administration and a BA in history.  He began working with the Mobile Fire-Rescue Department in 1978 and was promoted to district chief in 1994.  At the time of the promotion at issue, he was forty-nine years of age.  According to Chief Dean, Brannon treated his subordinates even-handedly, noting that Brannon could be abrasive.  (See Doc. 100, Exhibit 24-Dean dep. at 220)  In comparing Brannon to Glisson, Dean noted in particular that Brannon was a senior district chief, that he was the best fire ground strategy and tactics chief in the department, that he carries himself well, and that he has a command presence from his military service.  (Id. at 220-222) Additionally, Brannon completed executive fire officer training and was the chief fire officer designee from the IAFC.

Hansberry, a black male who was forty-one years of age at the time of the promotion, had served as a District Fire Chief.[11]  Hansberry earned an associate's degree in nursing in 1999 and had previously earned his paramedic certificate in 1995.  According to Chief Dean, Hansberry also presented   well  in  the  City  interview.   However,  Dean  was  aware  that  Hansberry  had  been

--------

   [11]  The court was unable to locate in the record any additional information regarding the length of Hansberry's service or other positions held by Hansberry.  Unlike Smith, Grisson and Brannon, no resume was submitted as an exhibit.

disciplined for repeatedly having a woman in the station house, that he had been arrested for DUI and that he had been involved in a traffic stop on another occasion during which a gun was found in his possession. Chief Dean stated that Hansberry was particularly well-suited for the new EMS deputy chief position because of his Associate's degree in nursing.

However, on questioning by plaintiff's counsel, Dean admitted that Hansberry had not performed any special projects before the promotion decision.  (Doc. 100, Exhibit 24-Dean dep. at 210)  Counsel also asked Dean whether Hansberry had produced "writings and data, reports, or tangible output," such as Dean had criticized Glisson for failing to produce.  Dean responded that Hansberry had computer skills, that he presented data well, and that Dean had received no complaints about Hansberry's performance in the field.  (*Id* at 211-213) Dean also praised Hansberry's recruiting skills.  (*Id.*)

Plaintiff Smith earned a BS in Emergency Services Administration and was working toward his masters degree in public administration and emergency management.  In addition, he has received 25 certificates in emergency response, and has attended over 155 schools and courses.  He also taught 388 schools and courses.  He began working for the Mobile Fire-Rescue Department in 1987 as a firefighter, and was promoted to EMT paramedic, driver, captain and finally district chief in 2003.

Plaintiff Glisson  holds a bachelor's degree in Emergency Services Management.  He has been employed by Mobile Fire-Rescue Department since 1975, first as a firefighter, then as a fire medic, fire medic driver, captain and finally district chief.  He took over as chief of the EMS and communications divisions in 1996, and then became the district chief for district one in 1999.  As the district one chief, he had additional administrative duties including additional paperwork,

10

responsibility for staffing for the whole department, and responsibility for daily operations of the department when the Fire Chief was unavailable.  In addition, Glisson served for two years as director of Southflite, the helicopter ambulance service operated by the University of South Alabama, which is still used by the Mobile Fire-Rescue Department.

## II.  Summary Judgment Standard

Summary judgment should be granted only if "there is no issue as to any material fact and the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The party seeking summary judgment bears "the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial."  *Clark v. Coats & Clark, Inc*., 929 F.2d 604, 608 (11th Cir. 1991).  Once the moving party has satisfied its responsibility, the burden shifts to the nonmovant to show the existence of a genuine issue of material fact.  *Id*.  "If the nonmoving party fails to makes 'a sufficient showing on an essential element of her case with respect to which she has the burden of proof, 'the moving party is entitled to summary judgment."  *Id.* (quoting *Celotex Corp., v. Catrett*, 477 U.S. 317 (1986))(footnote omitted).  "In reviewing whether the nonmoving party has met its burden, the court must stop short of weighing the evidence and making a credibility determination of the truth of the matter.  Instead, the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."  *Tipton v. Bergrohr GMBH-Siegen*, 965 F.2d 994, 999 (11th Cir. 1992) (internal citations and quotations omitted).  However, the mere existence of any factual dispute will not automatically necessitate denial of a motion for summary judgment; rather, only factual disputes that are material preclude entry of summary judgment.  *Lofton v. Secretary of Dept. of Children and*

*Family Services*, 358 F.3d 804, 809 (11th Cir. 2004).

The Eleventh Circuit has expressly rejected the notion that summary judgment should be seldom used in employment discrimination cases because they involve issues of motivation and intent.  See *Wilson v. B/E Aerospace, Inc*., 376 F.3d 1079 (11th Cir. 2004).  Rather, "the summary judgment rule applies in job discrimination cases just as in other cases.  No thumb is to be placed on either side of the scale."  *Id*. at 1086 (citation omitted).  "Federal courts do not sit as a super-personnel department that reexamines an entity's business decisions." *Chapman v. AI Transport*, 229 F.3d 1012, 1030 (11th Cir. 2000).

A)  <u>County Liability</u>

Defendant, The Mobile County Personnel Board, adopted defendants' Motion for Summary Judgment.  (Doc. 92)  However, as that document acknowledges, the Board is a necessary party in the event that either plaintiff is awarded injunctive relief in the form of a promotion.  As summary judgment is denied to the remaining defendants on some of the discrimination claims, it must be denied to the Personnel Board as well.

B)  <u>Individual Capacity Liability of Mayor Jones</u>

Defendants note that plaintiffs have offered no evidence that Mayor Jones' decision to approve Dean's recommendations was the result of intentional discrimination.  The court agrees. The plaintiffs' claims against Mayor Jones in his individual capacity are due to be dismissed.

C)  <u>Race Discrimination Claims–Federal</u>[12]

Plaintiffs bring claims for race discrimination based on sections 1981 and 1983 and Title

---

[12]  The analysis is limited to disparate treatment/pattern and practice race discrimination as the plaintiffs have not made a viable argument for disparate impact.

VII.[13]  The standard used for each of these statutes is identical.  *See Rice-Lamar v. City of Fort Lauderdale, Fla.*, 232 F.3d 836, 843 n.11 (11th Cir. 2000).  However, with regard to plaintiffs' claims under Title VII, the individual capacity claims against Dean and Jones are due to be dismissed as they are not 'employers' as defined by that statute.  *See Busby v. City of Orlando*, 931 F.2d 764, 772 (11th Cir. 1991).

In the absence of direct evidence of discrimination, as in the case at bar, the court applies the familiar burden-shifting analysis of *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802 (1973). To prove discriminatory treatment through circumstantial evidence: (1) a plaintiff must first make out a *prima facie* case, (2) then the burden shifts to the defendant to produce legitimate, nondiscriminatory reasons for the adverse employment action, and (3) then the burden shifts back to the plaintiff to establish that these reasons are pretextual. *Mayfield v. Patterson Pump Co.*, 101 F.3d 1371, 1375 (11th Cir. 1996) (internal citations omitted); *see also Standard v. A.B.E.L. Services, Inc.*, 161 F.3d 1318 (11th Cir. 1998) (same analysis applies to Title VII and § 1981 employment discrimination claims).

To establish a *prima facie* case, a plaintiff who claims discrimination on the basis of race in the denial of a promotion must show: (1) that he was a member of a protected group, (2) that he was not promoted, (3) that he was qualified for the promotion, and (4) that the position was filled by a person outside the protected group.  *See Benson v. Tocco, Inc.*, 113 F.3d 1203, 1207-08 (11th Cir. 1997).  Defendants do not challenge plaintiffs' *prima facie* showings.  Both plaintiffs have satisfied this requirement.

---

[13]  In addition, plaintiffs cite the Fourteenth Amendment; however, claims for violation of rights protected by that Amendment are not directly actionable but are brought by suit under section 1983.  See *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115 (1992).

Defendants offer legitimate, nondiscriminatory reasons for the promotion of Hansberry, an African-American male, to one of the two Deputy Chief positions. Defendants assert that the two successful applicants, Hansberry and Brannon, were better qualified than either plaintiff and handled themselves better in the interviews before Dean and his committee. Defendant Dean also states that plaintiff Smith was not promoted due to a lack of maturity and his choice to serve in his DMAT unit over the Fire Department job at a crucial time. Dean states that Grisson suffered from the failure to follow through on tasks and produce meaningful work product.

Some of the defendants' articulated reasons for promoting Hansberry over the plaintiffs are subjective. However,

> [s]ubjective reasons can be just as valid as objective reasons.... Nonetheless, we are mindful of the requirement articulated by the Supreme Court in *Burdine* that "the defendant's explanation of its legitimate reasons must be clear and reasonably specific" so that "the plaintiff be afforded a full and fair opportunity to demonstrate pretext." *Burdine,* 450 U.S. at 258, 101 S.Ct. at 1096 (quotation omitted). A subjective reason is a legally sufficient, legitimate, nondiscriminatory reason if the defendant articulates a clear and reasonably specific factual basis upon which it based its subjective opinion.

*Chapman v. AI Transport*, 229 F.3d 1012, 1034 (11th Cir. 2000) (quoting *Texas Dept. Of Community Affairs v. Burdine*, 450 U.S. 248 (1981).)

Because the reasons articulated by the defendants are legitimate non-discriminatory reasons, the burden shifts to the plaintiffs to establish that the proffered reasons are pre-textual. Plaintiffs submit that pretext is shown by the fact that the plaintiffs are imminently more qualified than Hansberry, that defendants changed their normal hiring procedure, that in two prior cases it was determined that Dean intentionally discriminated based on race and that Dean has made prior comments indicating his intent to promote African-American applicants when possible.

1) Comparative Qualifications

14

For comparative qualifications to be evidence of pretext the "disparities in qualifications must be of such weight and significance that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff for the job in question." *Ash v. Tyson Foods, Inc.*, 190 Fed.Appx. 924, 927 (11th Cir. 2006)(quoting *Cooper v. Southern Co.*, 390 F.3d 695, 732 (11th Cir.2004)).  The differences in the qualifications of the candidates are not insignificant.  For instance, where Dean praised Hansberry for having an Associate's degree in nursing, both plaintiffs have bachelor's degrees in Emergency Services Administration and other advanced training and education related to the job.  Moreover, where Dean criticized Glisson for not producing tangible work product, he could point to no such tangible work product produced by Hansberry.  However, each of these candidates have held, apparently successfully, a District Chief position.  The Deputy Chief position was the next possible step for each candidate.  All of the candidates appear to have been qualified.  Thus, it can not be said, on the record before the court, that no reasonable person could have selected Hansberry over Smith or Glisson.  Accordingly, the alleged disparity in qualifications does not provide evidence of pretext.

2)  Hiring Procedure

"[A]n employer's deviation from its own standard procedures may serve as evidence of pretext." *Hurlbert v. St. Mary's Health Care Sys., Inc.*, 439 F.3d 1286, 1299 (11th Cir.2006); *see also Bass v. Bd. of County Comm'rs, Orange County, Fla.*, 256 F.3d 1095, 1108 (11th Cir.2001) ( "An employer's violation of its own normal hiring procedure may be evidence of pretext.").  Plaintiff claims that changing the list of eligibles from three to ten is proof of Defendants' intent to discriminate on the basis of race. However, plaintiffs' contention fails for one basic reason; Hansberry was in the top three on the list.  Thus, the change from a list of three to a list of ten had

no effect on the promotion of Hansberry. Moreover, the court notes that it was an act of the Legislature, not the City, that changed the number on the list of eligibles. Also, there has not been sufficient proof presented that the change occurred for racially motivated reasons. Accordingly, the City's hiring procedure provides no evidentiary support for pretext.

3) Prior comments

Plaintiff also relies on two prior comments made by Dean as evidence of pretext. In the *Stringfellow* case there was testimony adduced that Dean had commented that he had promoted an individual because he was black. Dean is also reported as saying that "[w]e focus on hiring minorities, and they are hired if they pass all of the tests". Dean can be found to have been the final decision-maker, and his prior comments indicating a desire to promote minority employees could be deemed proof of pretext. This is true even though the comments were not made in the context of this particular hiring decision. *Ross v. Rhodes Furniture, Inc.*, 146 F.3d 1286,1291 (1998)(Potentially discriminatory comments that were not directly related to the employment decision could contribute to a circumstantial showing of discriminatory intent.)

4) Prior findings of intentional discrimination by Dean

As further evidence of pretext plaintiff relies on two cases wherein defendant Dean was found to have intentionally discriminated on the basis of race in hiring and promotion decisions. Defendants argue that, despite the *Stringfellow* jury's finding that race played a role in the decision not to promote plaintiffs, the court should not consider this evidence in ruling on summary judgment. Thus, there is only one prior judgment which is not sufficient to infer discrimination.

Defendants cite to *Denney v. City of Albany*, 247 F.3d 1172, 1181[14] (11th Cir. 2001), for the proposition that "[d]iscrimination cannot be inferred from one jury verdict".   However, while the Court in *Denny* determined that standing alone one prior case was insufficient to establish pretext, the Court also  noted that because the prior case "involved the same actor making the same kind of personnel decision" that it was not totally without persuasive force as evidence of intent to discriminate. *Id.* at 1191.   Thus,  because other evidence exists as to pretext, even one prior case has evidentiary value.

However, the court also finds that the *Stringfellow* case may be relied upon to show pretext. The fact that the trial court found that it had given an erroneous jury instruction on a distinct issue does not make the jury's finding of intentional discrimination less probative.   Accordingly, the court finds that the verdicts in the two prior cases, both of which involved the same decision-maker and promotional decisions among firefighters, are sufficiently related to the instant action that they may be considered as casting doubt on the legitimate non-discriminatory reasons given for the promotions in this case.[15]

5) Other considerations

The court also notes that defendants' non-discriminatory explanations face a difficult conceptual barrier.   Chief Dean created an *ad hoc* committee to interview the applicants, in part to avoid further lawsuits.   Yet defendants claim to identify subjective criteria for the decision without

---

[14]The comments on page 1181 are from the District Court's opinion.   The Eleventh Circuit did not adopt this finding in totality.   *See Denny* at 1189.

[15] Defendants do not contest the admissibility of this evidence.   However, the court notes that it is likely admissible as proof of motive and intent.   *See Vance v. Union Planters* 209 F.3d 438, 445 (5th Cir. 2000)(Evidence that defendant had been found to have similarly discriminated in the past was admissible under Fed.R.Evid. 404(b).)

testimony from all of the committee members that they were aware of and were influenced by those considerations.  Instead, defendants repeatedly cite Dean's own explanations for his decision.  On the other hand, in connection with plaintiff Smith's claim under the USERRA, *infra*, defendants assert that they are entitled to summary judgment despite Dean's testimony indicating that he considered Smith's choice to serve with the Disaster Medical Assistance Team[16] ("DMAT") as a negative factor in his evaluation; their argument is based on the claim that the decision was made by a committee of which Dean was only one member.  (Doc. 90, Exhibit 1 at 14-15; <u>citing</u> *Mason v. Village of El Portal*, 240 F.3d 1337 (11th Cir. 2001).)  Defendants can not have it both ways. Either the City committee was merely advisory, a position supported by the depositions of the committee members and Chief Dean,[17] or it was a joint decision as is sometimes argued by the defendants.  For summary judgment purposes, the court accepts that the committee was merely advisory and that the ultimate decision rested on Dean alone.

Moreover, Dean's contention that Smith did not present well in the interview, could also be questioned.  In the initial application process, which involved consideration of experience and education as well as an interview, three disinterested Fire Chiefs from other jurisdictions were sufficiently impressed with the plaintiffs to cast some doubt on claims that they simply did not come

---

[16]  As discussed more fully below, defendants contest this reading of Dean's testimony. On summary judgment, all reasonable inferences are drawn in favor of the non-movant.

[17]  See Doc. 100, Exhibit 22-Bell dep. at 45 (Dean was in charge); Doc. 100, Exhibit 32-Westerburg dep. at 77 (Dean led the panel), 88 (gave two names for one position; Dean would either promote both or decide which to promote first); Doc. 100, Exhibit 21-Adair dep. at 32 (he understood that Dean "had to make the ultimate decision;" as he understood the process, Dean rather than committee would decide promotion.); Doc. 100, Exhibit 24-Dean dep. at 132 ("I made the decision," not the committee); 150 (Committee input useful); 164 (he listened to the discussions rather than participated "Because I had to make the call.").

across well.  Regardless, it is fundamentally questionable whether a man in Dean's position, who had  worked with each of these men closely over several years, and who in this litigation has claimed a keen understanding of their character, would make a judgment on which of them to promote to the third highest position in the department on the basis of how they presented themselves in a short interview.

In sum, the court finds that the plaintiffs have presented sufficient evidence on the issue of pretext to withstand defendants' motion for summary judgment on this claim.


D.  <u>ADEA</u>

Plaintiff Glisson claims that defendants promoted Brannon and Hansberry instead of him on the basis of his age.  "When a plaintiff alleges disparate treatment, 'liability depends on whether the protected trait (under the ADEA, age) actually motivated the employer's decision.'  That is, the plaintiff's age must have 'actually played a role in [the employer's decisionmaking] process and had a determinative influence on the outcome.'"  *Reeves v. Sanderson Plumbing Products, Inc*. 530 U.S.133,141, 120 S.Ct. 209, 2105 (2000) (citations omitted).  To establish a *prima facie* case of age discrimination, a plaintiff must show (1) that he was a member of the protected age group; (2) he was subjected to an adverse employment action;  (3) he was qualified to do the job, and (4) he was treated less favorably than a similarly-situated individual outside his protected class. *Maynard v. Board of Regents of Div. of Universities of Florida Dep't of Educ. ex rel. University of South Florida*, 342 F.3d 1281, 1289 (11th  Cir.2003).  Defendants do not contest that Glisson has established a *prima facie* case; instead, they argue that he has failed to overcome their legitimate nondiscriminatory reason.

Unlike the race discrimination claims, defendants have no demonstrated history of prior discrimination and there are no statements of record by Chief Dean which would tend to show bias on the basis of age.  To prove that the reasons given by defendants are a pretext, Glisson argues that the lack of a built-in preference based on seniority creates a system biased against older workers. In addition, Glisson points to his qualifications as compared to the successful candidates.

The court finds Glisson's argument concerning the lack of a formal requirement that the committee give credit for seniority to be without merit.  Failure to give preference is not necessarily prejudicial to the older employee.  While this argument might be useful in a disparate impact case, plaintiff has not brought sufficient evidence of the prejudicial effect of the lack of a preference.  The ADEA prohibits discrimination against older workers on the basis of their age, but does not require that they be given preferential treatment.

Moreover, as discussed supra, the court does not find Glisson's qualifications to be so far superior to those of either Brannon or Hansberry that, in the absence of evidence of general bias on the basis of age, a reasonable jury could find Dean guilty of intentional age discrimination. Accordingly, the court finds that defendants are entitled to summary judgment on Glisson's ADEA claim.

In addition, plaintiff Glisson brings an age discrimination claim under Alabama's Age Discrimination in Employment Act, Ala. Code (1975) §25-1-20 et seq.  The Alabama ADEA states that "the remedies, defenses, and statutes of limitations, under this article shall be the same as those authorized by the federal Age Discrimination in Employment Act except that a plaintiff shall not be required to pursue any administrative action or remedy prior to filing suit under this article." 1975 Ala.Code § 25-1-29.

20

"[B]ecause it is self-evident that the AADEA's purpose and prohibitions are like the [Age Discrimination in Employment Act ('ADEA'), 29 U.S.C. §§ 621-634], to promote employment of older persons based on their ability rather than age and to prohibit arbitrary age discrimination in employment, it follows that [the ADEA's] principles should govern in AADEA cases as well." *Bonham v. Regions Mortgage, Inc*., 129 F.Supp.2d 1315, 1321 (M.D.Ala.2001). The same order and allocation of proof in cases under Title VII govern suits under the ADEA. *Id*. at 1321; *see also Chapman v. AI Transport*, 229 F.3d 1012, 1024 (11th Cir.2000) (en banc); *Dooley v. AutoNation USA Corp*., 218 F.Supp.2d 1270 (N.D.Ala.2002).

Accordingly, the same failure of proof which supports summary judgment in defendants' favor on plaintiff Glisson's federal ADEA claims requires the same treatment of his claims under the Alabama statute.

E.   USERRA

Plaintiff Smith claims that he was discriminated against based on his DMAT service.  38 U.S.C.A. §§ 4311 prohibits employment discrimination because of membership or service in the uniformed services.   Specifically, section 4311 provides, in pertinent part, that:

> (a) A person who is a member of ... or has an obligation to perform service in a uniformed service shall not be denied initial employment, reemployment, retention in employment, promotion, or any benefit of employment by an employer on the basis of that membership   ... performance of service ... or obligation.
> ...
> (c) An employer shall be considered to have engaged in actions prohibited--
> (1) under subsection (a), if the person's membership ... service ... or obligation for service in the uniformed services is a motivating factor in the employer's action, unless the employer can prove that the action would have been taken in the absence of such membership, application for membership, service, application for service, or obligation for service; ...

38 U.S.C.A. §§ 4311(a), (c)(1).  Additionally, USERRA "is to be liberally construed for the benefit of those who [leave] private life to serve their country." *Coffman v. Chugach Support Serv., Inc.*, 411 F.3d 1231, 1238 (11th Cir. 2005)(internal citations omitted).

In order to establish a *prima facie* case under Section 4311, the Plaintiff must show by a preponderance of the evidence that his status as a protected service member was a *motivating factor* in Dean's decision not to promote Smith. *Id*.; 38 U.S.C.A. § 4311.  A motivating factor does not have to be the *sole cause* of the employment action.  *Coffman*, 411 F.3d at 1238.  Instead, a motivating factor "is one of the factors that a truthful employer would list if asked for the reasons for the decision." *Id*. (internal citations omitted).  "[M]ilitary status is a motivating factor if the defendant relied on, took into account, considered, or conditioned its decision on that consideration." *Id*. (internal citation omitted).  The question of the employer's discriminatory motivation or intent may be proven by either direct or circumstantial evidence.  *Id.*

DMAT is part of the National Disaster Medical System of the Federal Emergency Management Agency ("FEMA").  Defendants acknowledge that Smith's service with the DMAT during Hurricane Ivan constitutes "uniformed service" as defined by the USERRA. "Intermittent disaster-response personnel," such as the Plaintiff, are considered members of the "uniformed services" for the purposes of USERRA during those periods of time when the National Disaster Medical System is activated and Disaster Medical Assistance Teams are deployed.  42 U.S.C.A. § 300hh-11(e)(3)(A); 38 U.S.C.A. § 4303(16).

As noted above, the record would support a finding that Chief Dean made the decision who to hire for the positions of Assistant and Deputy Fire Chief and that the committee was merely advisory.  Dean was the only person on the committee who had first hand information on the

applicants' prior work performance and any disciplinary actions the candidates may have had.  He

was also the only person who had a working knowledge of the requirements of the position and the

criteria he was looking for in a successful applicant.

In his deposition, Chief Dean testified at length concerning the reasons for failing to promote

plaintiff  Smith.  His explanation included  various events related to Smith's service with the

Disaster Medical Assistance Team.

> A: ... Randy has a lot of interests.  All of them is not Mobile Fire-Rescue Department.
> ... And I'm not saying that it has to be, but I'm saying that in a time of crisis, that it
> should be.  The citizens of this community and their safety and their best interest is of
> top priority [interjection omitted] for all members of Mobile fire-rescue department at
> any time, especially when you have major incidents bearing down on you.
> Q: Okay.
> A: Okay.  People who have that in mind don't pull their self out of that situation and
> put them in another role.  They don't pull their self out and they don't pull other upper
> level staff people out of that role and put them in another one.  And that has been the
> case.
> Q: Tell me about that.
> A: Okay. Hurricane Ivan coming through.  Chief Smith, Chief Parmer, Chief Sims,
> Steve Huffman, and several others pulled their self out of Mobile fire-rescue, put their
> self on active duty with a DMAT team at the request of the State EMA to staff special
> needs shelters in Mobile county.  But when they found out that they were going to be
> staffing special needs shelters, they refused to staff them.  But they were willing to go
> anywhere else in the gulf Coast and serve the needs of the people of the State of
> Alabama.
>     To me that's not in – something that someone sitting in a deputy chief's position
> would do.  ...
> Q: You are telling me that one of the reasons that Randy Smith didn't get this job, and
> I know there may be other reasons, but one of the reasons he didn't get this promotion
> is because of his involvement with a DMAT team in response to Hurricane Ivan?
> [objection omitted]
> Q: I know.  But is it accurate?
> A: The actions – the people activated to deploy the DMAT team during Hurricane
> Ivan.  And then the – the decision not to staff the special needs shelters of Mobile
> County, which is what they were activated for, played a role in that decision.
>          That's not – that's not the type of decision-making skills you're looking for with
> a deputy chief.
> Q: Well --
> A: In any position within any fire department.  After the crisis is over, if a team is

activated and they are deployed someplace, and your department can absorb that, there's absolutely nothing wrong with it. But when you're looking down the throat at 150 mile an hour winds coming up Mobile Bay, you don't need fifteen or twenty people, key people, pulled out of your organization. Especially when you're already short at the upper end of your organization with your management team.

...

Q: Okay, Was it a big role? I mean, was that a big thing?

A: It was not – it wasn't a positive.

Q: Well, I mean, would that alone have kept you from promoting him? I mean, I don't know what else you're going to say was a factor but –

A: With the group of people that interviewed, yeah.

(Doc. 100, Exhibit 24-Dean dep. at 184-188, 189-190.)

Despite defendants' various arguments that these admissions are irrelevant to the panel's decision and that the statements do not refer to Smith's "service" with the DMAT, the court finds that plaintiff has offered evidence sufficient to preclude summary judgment in defendants' favor on this federal claim. A reasonable jury could find that Smith's DMAT service was a motivating factor in defendant Dean's decision not to promote Smith. Once the Plaintiff meets this initial burden, "the burden shifts to the employer to prove the affirmative defense that legitimate reasons, standing alone, would have induced the employer to take the same adverse action." *Id*. at 1239; *Smith v. School Board*, 205 F.Supp.2d 1308 (M.D. Fla. 2002) ("The burden shifting framework approved by the Supreme Court in *NLRB v. Transp. Mgmt. Corp*., 462 U.S. 393, 401, 103 S.Ct. 2469, 76 L.Ed.2d 667 (1983), is used to determine whether [a] Defendant violated 38 U.S.C. § 4311."). The burden-shifting framework applies to both so-called "dual motive" cases–those cases in which the employer defends on the ground that, even if an invalid reason played a part in the adverse action, the same action would have been taken in absence of the invalid reason–and so-called "pretext" cases–where the employer defends on the ground that it acted for a valid reason. *Coffman*, 411 F.3d at 1239 (citing *Sheehan v. Dept. of Navy*, 240 F.3d 1009, 1014 (Fed. Cir. 2001)).

Dean testified later in the deposition that he would not have promoted Smith even if Smith had never been involved with DMAT. (*Id.* at 190)  Should defendant argue to the jury that this was a mixed motive case and that it would have promoted Brannon and Hansberry over Smith regardless of Smith's DMAT service, the burden of proof falls on defendant for that claim.  The evidence is insufficient for the court to grant summary judgment to the defendant on the basis of that affirmative defense

Conclusion

For the reasons set forth above, it is hereby **ORDERED** that

1) defendants' Motion for Summary Judgment is **GRANTED, in part** and **DENIED, in part**;

2) summary judgment is **GRANTED** in defendants' favor on plaintiff Glisson's claims of age discrimination under the ADEA and the Alabama Age Discrimination in Employment Act;

3) summary judgment is **GRANTED** in defendant Jones' favor on the individual capacity claims; and

4) that summary judgment is **DENIED** as to all other claims.

**DONE** this the 4<u>th</u> day of September, 2007.

s/ Kristi K. DuBose
**KRISTI K. DuBOSE**
**UNITED STATES DISTRICT JUDGE**